Daniel C. MORLEY, et al.

v.

Irving COHEN, et al.

Civ. No. R–83–4198.

United States District Court, D. Maryland.

May 31, 1985.

Richard D. Bennett and Marr, Bennett & Carmody, Baltimore, Md., for plaintiffs.

George R. Kucik, David T. Dekker, John M. Packman, and Arent, Fox, Kintner, Plotkin & Kahn, Washington, D.C., for defendants Irving Cohen, Halajen Mineral Development Corp., Mountainview Associates, Newport Associates, and Marvin Rosenbaum.

David M. Webster, David B. Wilkins, Carl S. Kravitz, and Nussbaum, Owen & Webster, Washington, D.C., and Paul Weinstein, Baltimore, Md., for defendant Schwartzman, Weinstock, Garelik & Mann, P.C.

Michael P. Crocker, Bel Air, Md., for defendant DiGuilan & DiChiara, P.A.

William A. Hylton, Jr., Louise Michaux Gonzales and Hylton & Gonzales, Baltimore, Md., for defendants Baker, Watts & Co.

John T. May, John T. Coyne, Paul D. Krause, and Jordan, Coyne, Savits & Lopata, Washington, D.C., for defendants

Schwartzman, Weinstein, Troy, Jacobs, and Fingerman, individually.

Zayle A. Bernstein, pro se, and Bernstein, Bernstein & Stein, Fort Lauderdale, Fla., for defendant Zayle A. Bernstein.

Sidney A. Bernstein, pro se, and Bernstein & Berk, P.A., Fort Lauderdale, Fla., for defendant Sidney A. Bernstein.

## MEMORANDUM AND ORDER

RAMSEY, District Judge.

This matter is before the Court on motions by all defendants to dismiss the second amended complaint, as further amended by interlineation. The motions are made pursuant to Rules 9(b), 12(b)(3), and 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiffs oppose the motions, and have filed memoranda in opposition. Notwithstanding plaintiffs' request for a hearing, the Court now rules pursuant to Local Rule 6 without oral argument. The positions of all parties have been briefed thoroughly.

### Factual Background

Plaintiffs in this action and in four other cases now pending before this Court,[1] contend that numerous promoters, partnerships, accountants, lawyers, and stockbrokers violated federal and state law in the creation and operation of various coal mining limited partnership tax shelters in the late 1970's. Plaintiffs assert a myriad of claims for relief ranging from traditional common law fraud to the federal Racketeer Influenced and Corrupt Organizations Act. 18 U.S.C. § 1961 et seq.

The second amended complaint, as further amended by interlineation,[2] alleges that in 1976 and in 1977 two investors, Daniel C. Morley, a resident of Maryland, and William T. Evans, a resident of Virginia, purchased units of two limited partnerships, which were involved in coal mining, from a partner of Baker, Watts & Company, a licensed Maryland broker-dealer. Morley purchased a one-half unit of a limited partnership known as Mountainview Associates in October 1976 for $50,000.00 and a full unit of a limited partnership known as Newport Coal Associates in November 1977 for $40,000.00. Evans purchased a full unit of Mountainview Associates in October 1976 for $100,000.00 and two units of Newport Coal Associates for $80,000.00.

Mountainview Associates ("Mountainview") and Newport Coal Associates ("Newport") were formed in 1976 and in 1977 respectively, for the stated purpose of mining and selling coal. Plaintiffs allege that it was represented to them that Mountainview had exclusive rights by sublease to mine coal in all seams located on or under approximately 3,500 surface acres of land in Pulaski County, Kentucky. Newport purported to have acquired rights by sublease to mine coal on or under approximately 400 surface acres of land in Leslie County, Kentucky. Investments in Mountainview totaled approximately $2,000,000.00; in Newport, $1,200,000.00. Both entities had the same general partner: defendant Halajen Mineral Development ("Halajen"), a New York corporation, which is solely owned by defendant Irving Cohen ("Cohen"), a New York resident.

---

1. See Earle K. Shawe v. Irving Cohen, et al., Civil Action No. R–83–4486; J. Gordon Firstman, et al. v. Irving Cohen, et al., Civil Action No. R–84–23; Phillip G. Norton v. Irving Cohen, et al., Civil Action No. R–84–296; Harry Feinberg, et al. v. Irving Cohen, et al., Civil Action No. R–84–315. The Court stayed these four actions pending the resolution of the present motions to dismiss. There is also a related action pending in the Northern District of Georgia, Atlanta Division. See Robertson v. Cohen, et al., Civil Action No. C–84–1974.

2. The original complaint was filed on December 7, 1983—a significant date for the later analysis

of the defendants' statute of limitations defenses. The first amended complaint added as defendants the individual attorneys who drafted the offering circulars and other documents. The second amended complaint added as defendants the broker-dealer who sold the units to the plaintiffs and his 16 partners. The second amended complaint, as further amended by interlineation, added Count V which had been deleted accidentally from the second amended complaint. In the interest of simplicity, the latter complaint, at issue here, will be referred to as the "complaint."

The offering circular for Mountainview was prepared by the New York law firm of Weiss, Rosenthal & Schwartzman, P.C. A successor firm, Schwartzman, Weinstock, Garelik & Mann, P.C., and five individual attorneys are sued as defendants (collectively referred to a "SWG & M"). Newport's circular was prepared by the Florida law firm of DiGuilian, Spellacy & Bernstein. In their present complaint, plaintiffs sue DiGuilian & DiChiara, P.A., a successor firm, and two individual defendants, Zayle Bernstein and Sidney Bernstein. Defendant Marvin F. Rosenbaum ("Rosenbaum") is alleged to have been the accountant for the Mountainview partnership and to have prepared an opinion with respect to the tax consequences attendant the investment in Mountainview.[3] The seventeen defendants whom plaintiffs added in the second amended complaint are all partners of Baker, Watts & Co. (hereinafter collectively referred to as "Baker, Watts"), the broker-dealer which sold the partnership interests to Morley and Evans.[4]

Plaintiffs' investments in Mountainview and Newport did not result in the tax advantages and other benefits they had anticipated. The Internal Revenue Service audited plaintiffs and assessed additional taxes, penalties, and interest against them as a result of disallowed deductions. Morley and Evans allege that the partnerships did not have the binding mineral leases that they were represented to have had and which were essential to favorable tax treatment.

The Securities and Exchange Commission also investigated these partnerships. On January 27, 1981, Cohen, Halajen, and Mountainview consented to the entry of judgments of permanent injunction and other equitable relief. Notwithstanding these judgments, defendant Cohen allegedly represented to the plaintiffs that

Mountainview and Newport continued to be viable investments.

Plaintiffs also raise numerous other complaints. They contend that the organization fees received by the general partner "had no reasonable relationship to the actual cost anticipated or incurred;" that defendants improperly transferred funds to foreign bank accounts; that plaintiffs omitted several material facts from the offering circular; and that much of what defendants represented was false and misleading. In addition, they allege that their inquiries into the continued viability of the partnerships were met with assurances that all was well.

The complaint contains sixteen counts: Count I sues Cohen, Halajen, Mountainview, and Newport for violations of section 1962(c) of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 et seq. Count II sues these four defendants and Baker, Watts for violations of sections 5(a), 12(1), and 15 of the Securities Act of 1933, 15 U.S.C. § 77a et seq. Count III sues all defendants for violations of sections 12(2), 15, and 17(a) of the Securities Act of 1933, sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78a et seq., and Rule 10(b)(5). Count IV sues Cohen, Halajen, Mountainview, Newport, and Baker, Watts for violations of the registration provisions of the Maryland Securities Law, MD. CORP. & ASS'NS CODE ANN. §§ 11–205, 11–501, and 11–703. Count V sues all defendants for violations of the anti-fraud provisions of the Maryland Securities Law, MD.CORP. & ASS'NS CODE ANN. §§ 11–301, 11–703. Count VI sues all defendants for negligent misrepresentation. Count VII sues all defendants for breach of fiduciary duty. Count VIII sues Cohen, Halajen, Mountainview, and Newport for breach of contract. Count IX sues SWG & M and

**3.** Count XI of the second amended complaint named as a defendant Case Engineering Company which had conducted feasibility studies with respect to both Mountainview and Newport. This defendant, however, was dismissed without prejudice under Local Rule 33(b) for failure to obtain service. *See* Paper No. 57.

**4.** Defendant G. Thomas Yeager, III is the particular partner whom plaintiffs allege to have sold them their units.

the individual partners, Schwartzman, Weinstock, Troy, Jacobs, and Fingerman, for professional negligence. Count X sues DiGuilian & DiChiara, P.A. and the Bernsteins for professional negligence. Count XI, which proceeds against Case Engineering Company for professional negligence, has been dismissed because of plaintiffs' failure to serve this defendant. *See supra* n. 3. Count XII sues Marvin Rosenbaum, for professional negligence. Count XIII sues Cohen and Halajen for conversion. Count XIV sues Cohen for fraud. Count XV sues Baker, Watts for negligence. Finally, Count XVI sues Baker, Watts for fraud.

This Court's jurisdiction over the RICO claim is premised upon 18 U.S.C. section 1964(c) (civil RICO) and 28 U.S.C. section 1331 (federal question) and 1337 (commerce and antitrust). Jurisdiction over the federal securities laws claims is based upon 28 U.S.C. section 1331 and 1337.[5]

Jurisdiction over the state claims is premised upon 28 U.S.C. sections 1331, 1332 (diversity) and 1337. Plaintiffs further seek to invoke this Court's pendent jurisdiction over the state claims. Only pendent jurisdiction is relevant for the purposes of the state claims and will be discussed below.[6] The requested relief includes recission, actual damages, statutory treble damages under RICO, punitive damages, and costs and expenses of this action, including attorneys' fees. A jury trial was demanded under Rule 38(b) of the Federal Rules of Civil Procedure. *See* Paper No. 29.

### Motions to Dismiss

The pending motions to dismiss [7] are directed toward the sufficiency of plaintiffs' factual allegations under the various counts, as well as several preliminary matters such as lack of jurisdiction and venue. Before the Court are seven motions to dismiss:

(1) Motion by defendants Cohen, Halajen, Mountainview, and Newport, to dismiss the amended complaint. Paper No. 28;

(2) Motion to dismiss the amended complaint filed by the individual attorney-defendants, Herman Schwartzman, Leonard Weinstock, Bernard Troy, Edward Fingerman, and Howard Jacobs. Paper No. 59;

(3) Defendant DiGuilian & DiChiara, P.A.'s motion to dismiss the amended complaint. Paper No. 60;

(4) Defendant Schwartzman, Weinstock, Garelik & Mann, P.C.'s motion to dismiss the amended complaint. Paper No. 61;

(5) Defendant Sidney A. Bernstein's motion to dismiss the amended complaint. Paper No. 62;

(6) Defendant Zayle A. Bernstein's motion to dismiss the amended complaint. Paper No. 63; and

---

**5.** It is unnecessary to determine whether 28 U.S.C. § 1337 supports jurisdiction over any of the federal claims inasmuch as the other provisions are clearly sufficient to vest this Court with jurisdiction.

**6.** The addition of the Baker, Watts defendants destroyed the complete diversity between plaintiffs and defendants required under § 1332. Plaintiff Morley is a Maryland resident. At all relevant times, Baker, Watts was a broker-dealer licensed in Maryland. Furthermore, it is reasonable to assume that at least some of the individual Baker, Watts partners were also Maryland residents. Thus, there is no diversity of citizenship. Additionally, the state claims do not present a federal question under § 1331 nor do they fall within the purview of the commerce and antitrust provisions outlined in § 1337.

**7.** The present motions to dismiss constitute the second skirmish between these parties. On December 7, 1983, the plaintiffs secured a temporary restraining order under Rule 65(b) of the Federal Rules of Civil Procedure which enjoined defendants "from, directly or indirectly, transferring to themselves or to any entity outside the United States of America any assets, choses in action, or other real or personal property." *See* Paper No. 3. After continuing the order for an additional ten days, *see* Memorandum and Order dated December 16, 1983 (Paper No. 15), and two hearings, this Court vacated the temporary restraining order and denied plaintiffs' motion for preliminary injunction, *see* Order dated December 22, 1983. *See also* Memorandum and Order dated December 15, 1983 (plaintiffs' motion to quash subpoena) (Paper No. 9).

(7) Defendant Baker, Watts's motion to dismiss the amended complaint (Paper No. 64) which was later amended. Paper No. 74.

The motions filed by the individual attorney-defendants Schwartzman, Weinstock, Troy, Fingerman, and Jacobs and defendant DiGuilian & DiChiara, P.A. primarily incorporate by reference the motions and memoranda of SWG & M. Defendant Sidney Bernstein's and defendant Zayle Bernstein's motions essentially incorporate by reference the motions and memoranda of defendant SWG & M and defendants Cohen, Halajen, Mountainview, Newport and Rosenbaum.[8] Plaintiffs have in turn filed extensive memoranda in opposition to all motions.

The grant of a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) is appropriate only when "it appears beyond doubt that plaintiff[s] can prove no set of facts in support of [their] claims which would entitle [them] to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). In ruling upon the pending motion to dismiss, this Court must view the complaint in the light most favorable to plaintiffs and resolve every doubt in their behalf. 5 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357 (1969). Plaintiff's allegations are to be taken as true for the purpose of ruling upon the pending motion. *See id; see also Jenkins v. McKeithen*, 395 U.S. 411, 421–22, 89 S.Ct. 1843, 1848–49, 23 L.Ed.2d 404 (1969). Moreover, any inference that may reasonably be drawn or construed from plaintiffs' complaint shall be considered together with the allegations of fact. *Murray v. City of Milford*, 380 F.2d 468, 470 (2d Cir.1967); *Westray v. Porthole, Inc.*, 586 F.Supp. 834, 836 (D.Md. 1984).

### Venue

The Court first turns to defendants' motions to dismiss under Fed.R.Civ.P. 12(b)(3) as the starting point for what promises to be a very long judicial journey. Section 1391(b) of Title 28, which governs venue in actions "wherein jurisdiction is not founded solely on diversity of citizenship," provides that an action "may be brought only in the judicial district where all defendants reside, or in which the claim arose, except as otherwise provided by law." This section is supplemented by federal statutes under which the first three counts are brought. The Securities Act of 1933, 15 U.S.C. § 77v(a), permits an action to be brought "in the district wherein the defendant is found or is an inhabitant or transacts business, or in the district where the offer of sale took place, if the defendant participated therein...." The Securities Exchange Act of 1934, 15 U.S.C. § 78aa, permits actions "in the district wherein any act or transaction constituting the violation occurred ... or in the district wherein the defendant is found or is an inhabitant or transacts business...." The Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1965(a), restricts actions under RICO to districts "in which such person resides, is found, has an agent, or transacts his affairs."

Under the "co-conspiracy" theory of venue, which is applicable in securities actions such as the one before the Court, "it is not necessary that each defendant named have engaged in acts or transactions in the forum district." *Rose v. Arkansas Valley Environmental & Utility Authority*, 562 F.Supp. 1180, 1211 (W.D.Mo.1983), *quoting Warren v. Bokum Resources Corp.*, 433 F.Supp. 1360, 1364 (D.N.M.1977). The act of a single defendant is deemed to be the act of all the defendants and accordingly will establish venue as to all defendants in that district. *Schreiber v. W.E. Hutton & Co.*, 382 F.Supp. 297, 299 (D.D.C.1974). The act need not form "the core of the claim," but must be "something more than an immaterial part of the claim." *Warren,*

---

**8.** Because the issues raised by the various groups of defendants in their motions to dismiss are essentially identical, the Court will treat the seven motions as a single motion to dismiss. Only where an argument is unique to a particular defendant will the Court address the separate motion in which it was raised.

*supra,* at 1363–64. *See, e.g., Mariash v. Morrill,* 496 F.2d 1138 (2d Cir.1974) (mailing of a tender offer); *Clapp v. Stearns & Co.,* 229 F.Supp. 305, 307 (S.D.N.Y.1964) (telephone call).

■ Venue is proper in this district with respect to Counts II and III because important steps in the execution and consummation of the alleged fraudulent scheme occurred in Maryland. All defendants were the intended beneficiaries of alleged acts including inducements to purchase the partnership units, the signing of the subscription agreements, and the later representations as to the partnerships' viability.

■ Venue is also proper under RICO. Section 1965(a)'s inclusion of "has an agent" permits this Court to retain venue in this action. The Baker, Watts defendants were "agents" not only in the selling of the units, but also in the alleged fraudulent scheme. *See Van Schaick v. Church of Scientology of California, Inc.,* 535 F.Supp. 1125 (D.Mass.1982); *King v. Vesco,* 342 F.Supp. 120, 123 (N.D.Cal.1972). In addition, the Court notes that, if the allegations of the complaint are to be believed, then defendants "transacted their affairs" in this district. *See* 18 U.S.C. § 1965(a). Accordingly, defendants' motions to dismiss under Rule 12(b)(3) will be denied.

### Count I

Count I seeks treble damages, costs, and attorneys' fees from defendants Cohen, Halajen, Mountainview, and Newport for alleged violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* (1982). Defendants attack the RICO claim on several fronts including (1) expiration of the statute of limitations; (2) failure to properly plead the essential elements of a RICO claim; and (3) failure to plead the elements of a RICO claim with the particularity required by Fed.R.Civ.P. 9(b). Predictably, plaintiffs, contend that defendants' arguments are without merit. The Court will address these arguments *seriatim.*

### 1. Statute of Limitations

■ Enacted as part of the Organized Crime Control Act of 1970, RICO provides for both criminal and civil penalties. 18 U.S.C. §§ 1963 & 1964. Criminal prosecutions under RICO are subject to the general federal five-year statute of limitations contained in 18 U.S.C. § 3282 (1982). *See, e.g., United States v. Cody,* 722 F.2d 1052, 1056 (2d Cir.1983), *cert. denied,* — U.S. ——, 104 S.Ct. 2678, 81 L.Ed.2d 873 (1984). The civil provisions of RICO, however, do not specify a particular limitations period. 18 U.S.C. § 1964. Under these circumstances, the general rule is that where a federal statute provides for a federal cause of action but does not contain an applicable limitations period, the federal courts are required to "borrow" an analogous statute of limitations from the forum state. *UAW v. Hoosier Cardinal Corp.,* 383 U.S. 696, 704–05, 86 S.Ct. 1107, 1112–13, 16 L.Ed.2d 192 (1966); *O'Hara v. Kovens,* 625 F.2d 15, 17 (4th Cir.1980), *cert. denied,* 449 U.S. 1124, 101 S.Ct. 939, 67 L.Ed.2d 109 (1981). In *O'Hara,* the Fourth Circuit enunciated several principles directly applicable to the present case. Chief Judge Haynsworth concluded:

> When borrowing a state statute of limitations for federal purposes, a court should look to the statute which most clearly addresses the same or similar policy considerations as are addressed by the federal right being asserted. It is not necessary that the state statute operate in the same fashion as the federal scheme, nor is it necessary that the state statute describe a cause of action identical to the federal cause at issue. There simply must be a commonality of purpose between the federal right and the state statutory scheme so that it is reasonable to subject the federal implied right to the statute of limitations provided by state law.

625 F.2d at 18 (citations omitted).

■ Apparently, the issue of which Maryland statute of limitations is most analogous to a RICO claim is a question of first impression in this district. Therefore,

unconstrained by precedent, both parties urge this Court to adopt the state provision that is most beneficial to their respective case. Plaintiffs argue in favor of the three-year period for common fraud. *See* MD.CTS. & JUD.PROC.CODE ANN. § 5–101 (1984). Plaintiffs maintain that because their RICO claim is premised on defendants' acts of securities fraud, mail fraud, and wire fraud, the most analogous state claim is one for common law fraud. *See Kirschner v. Cable/Tel Corp.*, 576 F.Supp. 234, 241 (E.D.Pa.1983). Defendants, on the other hand, argue that the "RICO cause of action is nothing more than an attempt to collect treble damages for the securities laws violations alleged in the balance of the complaint," and should therefore be time-barred if the securities claims are time-barred.[9] Defendants urge the Court to apply the same statute of limitations to the RICO claim as is applicable to the paramount underlying predicate act.

■ Several factors militate against application of the statute of limitation for the predicate acts to the substantive RICO claim. First:

RICO is a federal law proscribing various racketeering acts which have an effect on interstate or foreign commerce. Certain of those racketeering, or predicate acts violate state [and federal] law and RICO incorporates the elements of those state [and federal] offenses for definitional purposes. State [and feder-

al] law offenses are not the gravamen of RICO offenses. RICO was not designed to punish state [or federal] law violations; it was designed to punish the impact on commerce caused by conduct which meets the statute's definition of racketeering activity. To interpret state [or federal] law offenses to have more than a definitional purpose would be contrary to the legislative intent of Congress and existing state [and federal] law.

*United States v. Forsythe*, 560 F.2d 1127, 1135 & n. 11 (3d Cir.1977) (citations omitted); *see also* Moran, *Pleading a Civil RICO Action under Section 1962(c): Conflicting Precedent and the Practitioner's Dilemma*, 57 TEMP.L.Q. 731, 737–38 (1984) (hereinafter cited as *Pleading Civil RICO*). In short, RICO does not provide a remedy for the mere commission of the predicate acts. Rather, RICO prohibits the use of the predicate acts to invest in, acquire or maintain an interest in, or conduct the affairs of, an enterprise whose activities affect interstate commerce. 18 U.S.C. § 1962. "Commission of two or more predicate acts is but an element of a § 1962 violation; those acts do not themselves constitute the § 1962 violation." *Bankers Trust Company v. Rhoades*, 741 F.2d 511, 516 (2d Cir.1984). Accordingly, there is no commonality of purpose between RICO and the statutory scheme encompassing the predicate acts. They are not designed to punish the same offenses. *Cf. Seawell v. Miller Brewing Company*, 576 F.Supp.

---

9. Defendants' advance a second argument which warrants only brief mention. The subscription agreements for Mountainview and Newport provide that the "Agreement shall be governed by and construed in accordance with the laws of the State of New York." (Cohen affidavit, Exh. D, ¶ 7(a)). Defendants argue that this provision necessitates the application of the New York statute of limitations to the RICO claim. The Court finds this argument without merit.

The subscription agreements do not provide that all actions arising out of the agreements will be governed by the law of New York. Rather, the provisions establish that any questions regarding the application or interpretation of the agreement itself shall be governed by New York law.

Moreover, plaintiffs' RICO claim does not arise out of the subscription agreements. The misrepresentations and omissions allegedly contained in the agreements merely provide the predicate acts for the RICO claim. The RICO claim does not proceed against the defendants for violations of the securities laws in connection with the subscription agreements. Rather, defendants are alleged to have conducted or participated in the affairs of an enterprise through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c). Under these circumstances, it cannot be said that the RICO claim falls within the purview of the New York choice of laws provisions contained in the subscription agreements. Accordingly, Maryland, the forum state, provides the applicable statute of limitations.

424, 427 (M.D.N.C.1983). *But see Kirschner v. Cable/Tel Corp.*, 576 F.Supp. 234, 241 (E.D.Pa.1983).

Second, pertinent case law indicates that the statutes of limitations for the predicate acts have no bearing on the validity of a RICO claim. Several courts have considered whether the expiration of the limitations periods on the predicate acts precludes a criminal RICO prosecution. These courts have concluded that the expiration is not a bar to prosecution under RICO. *See, e.g., United States v. Licavoli*, 725 F.2d 1040, 1047 (6th Cir.), *cert. denied,* — U.S. ——, 104 S.Ct. 3535, 82 L.Ed.2d 840 (1984); *United States v. Malatesta*, 583 F.2d 748, 758 (5th Cir.1978), *cert. denied,* 440 U.S. 962, 99 S.Ct. 1508, 59 L.Ed.2d 777 (1979); *United States v. Davis*, 576 F.2d 1065, 1066–67 (3d Cir.), *cert. denied,* 439 U.S. 836, 99 S.Ct. 119, 58 L.Ed.2d 132 (1978). While these cases concerned criminal RICO prosecutions, their teachings are equally applicable to civil RICO cases inasmuch as the same basic elements must be established in either case. 18 U.S.C. § 1962 (1982). Thus, the viability of a civil RICO claim should not be premised upon the timeliness of the predicate acts.

Finally, subjecting civil RICO claims to the statute of limitations of the predicate acts represents an unworkable solution in all but a few cases. The statutory definition of "racketeering activity," 18 U.S.C. § 1961(1), contains a laundry list of federal and state offenses. Unless the two alleged predicate acts are closely related, as in the present case, it is unlikely that both acts would be subject to the same statute of limitations. Under these circumstances, the federal court would be saddled with the unenviable task of selecting one of two disparate limitations periods. Defendants would solve this dilemma by requiring the court to determine which predicate act predominates the complaint. Such a process would be arbitrary at best, and this Court

is unwilling to engage in such capricious selections. The Court must therefore look elsewhere for the most analogous Maryland statute of limitations.

■ Careful consideration of the various Maryland statutes of limitations indicates that the relevant state statute is MD.CTS. & JUD.PROC.CODE ANN. § 5–101, which provides that "[a] civil action at law shall be filed within three years from the date it accrues...." Several factors support the selection of section 5–101. First, it is directly applicable to civil actions at law which encompasses a civil RICO claim. Second, the three-year period is sufficiently long to permit plaintiffs to pursue their federal rights, but not so long as to permit them to press stale claims. Finally, the use of the three-year period for *all* RICO claims brought in this district, regardless of the nature of the underlying predicate acts, will establish a degree of uniformity which is highly desirable given the other complexities of RICO. Indeed, at least one commentary has suggested the uniform application of state "catch-all" or "statutory-liability" periods to civil RICO claims. *See* Smith, Flanagan & Pastuszenski, *The Statute of Limitations in a Civil RICO Suit for Treble Damages,* TECHNIQUES IN THE INVESTIGATION OF ORGANIZED CRIME, 974, 1033–34 (G.R. Blakey ed. 1980); *see also Seawell v. Miller Brewing Company*, 576 F.Supp. 424, 427 (M.D.N.C. 1983) (applying statutory liability period).[10]

Although, under section 5–101, plaintiffs were required to file suit within three years from the date their cause of action accrued, both federal and Maryland law provide that when a party is kept in ignorance of a cause of action by the fraud of an adverse party, the cause of action is deemed to accrue at the time the party discovered or should have discovered the fraud by the exercise of ordinary diligence. *See Seawell, supra* at 427; MD.CTS. &

**10.** Although the three-year period selected by the Court is the same as that advanced by plaintiffs, it is important to note the differences between the reasons proffered by the Court and those offered by plaintiffs. Plaintiffs' argu-

ments for § 5–101 are applicable only to this specific case; whereas the Court's reasoning is applicable to *all* RICO claims. Thus, while the result is the same, the means for obtaining that result are quite different.

JUD.PROC.CODE ANN. § 5–203 (1984). In the present case, plaintiffs have alleged that defendants' fraud kept them in ignorance of their claims, including the RICO claim, until May 1983. Defendants maintain that plaintiffs knew or should have known of the alleged fraud in February 1981. Assuming *arguendo* that the February 1981 date is correct, plaintiffs' RICO claim is nevertheless timely inasmuch as it was filed in December 1983, two months before the expiration of the three-year period.

## 2. *Pleading a Civil RICO Claim*

Having concluded that the RICO claim was timely filed, the Court next turns to the sufficiency of plaintiffs' RICO pleadings. As a preliminary matter, it is necessary to delineate the essential elements of a RICO claim under section 1962(c).[11] Plaintiffs must allege that the defendants:

(1) were employed by or associated with

(2) an enterprise

(3) engaged in, or the activities of which affect, interstate or foreign commerce, and

(4) that the defendants conducted or participated in the conduct of the enterprise's affairs

(5) through a pattern of racketeering activity.

*See Haroco, Inc. v. American National Bank and Trust Company*, 747 F.2d 384, 387 (7th Cir.1984), *cert. granted*, —— U.S. ——, 105 S.Ct. 902, 83 L.Ed.2d 917 (1985); *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir.1983), *cert. denied sub nom.*, *Moss v. Newman*, —— U.S. ——, 104 S.Ct.

1280, 79 L.Ed.2d 684 (1984). To invoke RICO's civil remedies, plaintiffs must further allege that they "were injured in [their] business or property by reason of [defendants'] violation of section 1962(c)...." 18 U.S.C. § 1964(c); *see Moss v. Morgan Stanley, Inc., supra*, 719 F.2d at 17.

### A. *"Enterprise"*[12]

In *United States v. Turkette*, 452 U.S. 576, 590, 101 S.Ct. 2524, 2532, 69 L.Ed.2d 246 (1981), the Supreme Court determined that the enterprise element included both legitimate and illegitimate enterprises. In reaching this conclusion, the Court set forth several important principles which are applicable to the case at bar. The majority concluded that an enterprise is an entity whose members are "associated together for a common purpose of engaging in a course of conduct." *Id.* at 583, 101 S.Ct. at 2528. The enterprise's existence is established by "evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *Id.* Finally, the enterprise must be an entity separate and distinct from the pattern of racketeering activity in which it engages. *Id*; *see also United States v. Bledsoe*, 674 F.2d 647, 665 (8th Cir.), *cert. denied*, 459 U.S. 1040, 103 S.Ct. 456, 74 L.Ed.2d 608 (1982).

The Fourth Circuit, in *United States v. Griffin*, 660 F.2d 996 (4th Cir. 1981), *cert. denied*, 454 U.S. 1156, 102 S.Ct. 1029, 71 L.Ed.2d 313 (1982), also established several principles regarding the enterprise element which are particularly ap-

---

**11.** While plaintiffs' complaint is somewhat obscure as to which subsection of § 1962 defendants allegedly violated, the Court believes that a fair reading of the entire complaint, and ¶ 84 in particular, indicates that plaintiffs have chosen to proceed under § 1962(c). That section provides:

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c) (1982).

**12.** Section 1961(4) defines "enterprise" as including

any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity[.]

18 U.S.C. § 1961(4) (1982). Under this definition, there are two distinct types of enterprises: a "legal entity enterprise" and an "association-in-fact enterprise." *See United States v. Griffin*, 660 F.2d 996, 999 (4th Cir.), *cert. denied*, 454 U.S. 1156, 102 S.Ct. 1029, 71 L.Ed.2d 313 (1982).

plicable to the instant case. There the court concluded that where

> the RICO enterprise charged is not a legal entity, but merely a 'group of individuals associated in fact,' the purpose of the association, along with the composition of the group, would seem essential to proof of such an entity's separate existence.

*Id.* at 999.

■ In the present case, a liberal reading of plaintiff's RICO claim indicates that the enterprise element has been sufficiently pled to withstand defendants' motion to dismiss. While plaintiffs' RICO claim is rather poorly drafted, it cannot be said that they can prove no set of facts regarding the existence of an enterprise which would entitle them to relief. *See Conley v. Gibson, supra,* 355 U.S. at 45–46, 78 S.Ct. at 101–102.

Paragraph 85 of the amended complaint adequately alleges that Cohen, Halajen, Mountainview, and Newport were an "association-in-fact" type enterprise as defined in 18 U.S.C. section 1961(4). Each of the defendants named in Count I were associated together for the common purpose of marketing and selling Mountainview and Newport securities. The enterprise was an ongoing organization separate and distinct from the pattern of racketeering activity in which it allegedly engaged. Thus, the requirements of *Turkette* and *Griffin* have been met with respect to the enterprise element. Moreover, because each of the defendants in Count I is alleged to have been a member of the "association in fact" enterprise, each defendant is necessarily alleged to have been associated with the enterprise. This satisfies the "employed by or associated with" element outlined above.

### B. *Interstate Commerce*

■ The pleadings contain ample allegations of a nexus between the enterprise and interstate commerce. Cohen is a New York resident; Halajen is a New York corporation; Mountainview and Newport are both New York limited partnerships. Complaint ¶¶ 9–12. Mountainview and Newport were organized for the purpose of leasing coal rights in Kentucky. Complaint ¶¶ 28 & 43. Limited partnership units in Mountainview and Newport were offered for sale in several states, including Maryland. Complaint ¶ 31. These units were purchased by a Maryland resident (Morley) and a Virginia resident (Evans). Complaint ¶¶ 7 & 8. Taken as a whole, these allegations adequately demonstrate that the enterprise engaged in interstate commerce within the meaning of RICO.

### C. *Conducted or Participated in the Enterprise's Affairs*

■ It has recently been determined that "the doctrines of *respondeat superior* and vicarious liability, normally applicable in the criminal realm, are equally applicable in RICO cases, whether the remedy sought is criminal or civil." *Heffron Company, Inc. v. Seafarers' Maryland Building Corporation,* No. HAR–83–3724, slip op. at 18 (D.Md. Feb. 26, 1985) (Report and Recommendation of Magistrate Frederic N. Smalkin). Thus, a corporation or partnership can be held liable under RICO for the acts of its agents and/or representatives committed within the scope of their authority. *See* H. HENN & J. ALEXANDER, LAWS OF CORPORATIONS AND OTHER BUSINESS ENTERPRISES, at 483 (3d ed. 1983). In the present case, Cohen is allegedly the sole shareholder and president of Halajen and the general partner of Mountainview and Newport. Complaint ¶ 9. In these positions, Cohen had authority to market and sell limited partnership units in Mountainview and Newport. As such, the alleged fraudulent acts of Cohen, committed while marketing and selling the securities, are imputed to Halajen, Mountainview, and Newport. Therefore, Cohen, Halajen, Mountainview, and Newport each conducted or participated in the conduct of the enterprise's affairs within the meaning of RICO. *See Bernstein v. IDT Corporation,* 582 F.Supp. 1079, 1083 (D.Del.1984).

### D. *Through a Pattern of Racketeering Activity*

■ RICO defines "pattern of racketeering activity" as requiring "at least two

acts of racketeering activity, one of which occurred after the effective date of this chapter [October 15, 1970] and the last of which occurred within ten years ... after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5). Section 1961(1) delineates a myriad of offenses which are included within the term "racketeering activity." For purposes of the present action, the applicable offenses are contained in section 1961(1)(B) which provides: "any act which is indictable under ... [18 U.S.C.] section 1341 (relating to mail fraud), [18 U.S.C.] section 1343 (relating to wire fraud)," and 1961(1)(D) which provides: "any offense involving ... fraud in the sale of securities...." [13]

Essentially, plaintiffs maintain that defendants used the mail and wire services to transmit the false statements and omissions, all of which furthered defendants' fraudulent sale of securities. Thus, the affairs of the enterprise—the sale of Mountainview and Newport securities—were allegedly conducted through a pattern of racketeering activity—mail, wire, and securities fraud. It is clear that these allegations are sufficient to withstand defendants' motion.[14]

Defendants raise one argument with respect to this element which merits discussion, albeit brief. Defendants maintain that plaintiffs must show that defendants have been convicted of the predicate acts to establish a "pattern of racketeering activity." This argument has generally been rejected by those courts which have addressed the issue. Recently, however, the Second Circuit endorsed the "convictions requirement" in *Sedima, S.P.R.L. v. Imrex Company, Inc.*, 741 F.2d 482 (2d Cir.1984), *cert. granted,* —— U.S. ——, 105 S.Ct. 901, 83 L.Ed.2d 917 (1985). In their supplemental memorandum in support of the motions to dismiss, defendants ask this Court to adopt the *Sedima* reasoning. Contrary to defendants' assertions, however, this Court cannot follow *Sedima* in light of the recent Fourth Circuit opinion in *Battlefield Builders, Inc. v. Swango*, 743 F.2d 1060 (4th Cir.1984). In reversing the district court's granting of defendants' motion to dismiss, Chief Judge Winter concluded that

> plaintiff must *allege* two acts of extortion within a ten year period after October 15, 1970, in order to formulate a complaint which will withstand a motion under Rule 12 for dismissal for failure to state a claim upon which relief can be granted.

*Id.* at 1061 (emphasis added). The court reasoned that for purposes of the case, "a pattern of racketeering activity is established if defendants are *alleged to be guilty* of both extortion and attempted extortion." *Id.* at 1063 (emphasis added). The Fourth Circuit's conclusion that mere allegations are sufficient, implicitly, if not explicitly, rejects any requirement that defendants be convicted of the predicate acts. This Court, like the court in *Heffron*, is "of

---

**13.** Section 1341 provides in pertinent part:

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, ... for the purpose of executing such scheme or artifice or attempting so to do, places in any post office ... any matter or thing whatever to be sent or delivered by the Postal Service ... shall be fined not more than $1,000 or imprisoned not more than five years, or both.

18 U.S.C. § 1341 (1982).

Section 1343 provides:

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be trans-

mitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined not more than $1,000 or imprisoned not more than five years, or both.

18 U.S.C. § 1343 (1982).

**14.** To the extent *Dan River, Inc. v. Icahn*, 701 F.2d 278, 291 (4th Cir.1983), requires plaintiffs to plead criminal intent with respect to the predicate acts of mail, wire, and securities fraud, the Court concludes that the pleadings are sufficient. The amended complaint is replete with allegations that defendants intended to and did devise schemes and artifices to defraud plaintiffs. *See, e.g.,* Complaint ¶¶ 82 & 83.

the opinion that if faced directly with the question of whether civil RICO liability requires proof of criminal conviction of the predicate acts, the Fourth Circuit would reject the *Sedima* reasoning." *Heffron, supra,* at 24. This Court, therefore, will not require allegations of criminal convictions. *See Wang Laboratories, Inc. v. Burts,* 612 F.Supp. 441 at 447, 448 (D.C.Md.1985) (Northrop, J.) *But see Spinelli, KehiayanBerkman, S.A. v. Gruner,* 602 F.Supp. 372 (1985) (Young, J.) (distinguishing *Battlefield Builders* and following *Sedima*).

E. *Injury by Reason of a Violation of Section 1962*

■ Heretofore, the Court has concluded that plaintiffs' allegations are sufficient to plead a violation of RICO. Plaintiffs must, however, clear one last hurdle to avoid dismissal. Plaintiffs must further allege that they were "injured in [their] business or property by reason of the [defendants'] violation of section 1962[c]...." 18 U.S.C. § 1964(c).[15]

A growing number of courts have seized upon the "by reason of" language of the Act to impose a variety of restrictions on RICO claims. Although these restrictions have varying judicial designations, including competitive injury, commercial injury, indirect injury, and racketeering injury, the common thread running through each restriction is a requirement that the plaintiff must suffer some injury beyond those injuries directly caused by the predicate acts. *See Haroco, Inc. v. American National Bank & Trust Company,* 747 F.2d 384, 391–393 (7th Cir.1984), *cert. granted,* — U.S. ——, 105 S.Ct. 902, 83 L.Ed.2d 917 (1985); Note, Civil RICO and "Garden Variety" Fraud—A Suggested Analysis, 58 ST. JOHN'S L.REV. 93, 105–11 (1983) (arguing against the adoption of these requirements).

Defendants urge this Court to adopt the racketeering injury requirement recently made popular by the Second Circuit in *Bankers Trust Company v. Rhoades,* 741 F.2d 511, 516 (2d Cir.1984), and *Sedima, supra,* 741 F.2d at 496. In *Sedima,* the court concluded that to establish a racketeering injury a plaintiff must "show injury different in kind from that occurring as a result of the predicate acts themselves, or not simply caused by the predicate acts, but also caused by an activity which RICO was designed to deter." *Sedima, supra,* at 496. Neither the *Sedima* nor *Bankers Trust* panels, however, endeavored to provide a workable definition of a "racketeering injury." Indeed, no court which yet has recognized the racketeering injury requirement has been able to define it. *See Alexander Grant and Company v. Tiffany Industries, Inc.,* 742 F.2d 408, 413 (8th Cir.1984). Several courts, desirous of limiting the scope of RICO but unable to define racketeering injury, have simply concluded that they will know it when they see it. *See, e.g., Willamette Savings & Loan v. Blake & Neal Finance Co.,* 577 F.Supp. 1415, 1430 (D.Ore.1984).

The inability of courts to define a racketeering injury, together with the broad remedial purposes and intent of RICO, leads this Court to reject any requirement that plaintiffs must establish an injury separate and distinct from those injuries caused by the predicate acts. *Accord Windsor Associates, Inc. v. Greenfeld,* 564 F.Supp. 273, 278–79 (D.Md.1983). In reaching this conclusion, the Court finds the reasoning of Judge Cardamone's dissents in *Sedima* and *Bankers Trust,* as well as the Seventh Circuit opinion in *Haroco, supra,* particularly persuasive. In *Haroco,* the court reasoned that the imposition of the racketeering injury requirement "reduces RICO's civil provisions to a trivial remedy, available in only a tiny fraction of RICO violations and dependent upon entirely fortui-

---

**15.** Section 1964(c) provides in full:

(c) Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee.

18 U.S.C. § 1964(c) (1982).

814

tous facts." *Haroco, supra,* at 398; *see also Sedima, supra,* at 510 (Cardamone, J., dissenting). Before this Court would permit such a significant segment of persons to escape the otherwise broad reach of RICO, "there should be, at least, unmistakable support in the history and structure of the legislation." *See Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 756, 95 S.Ct. 1917, 1935, 44 L.Ed.2d 539 (1975) (Powell, J., concurring). The Court finds no such unmistakable support for the imposition of a racketeering injury requirement. Therefore, this Court, like others in this district, will not require a separate racketeering injury. *See Heffron, supra,* at n. 19; *Windsor Associates, supra,* at 278–79.[16]

### 3. *Pleading Fraud in Connection with RICO Claim*

■ Finally, defendants argue that plaintiffs' failure to plead the fraudulent predicate acts (securities fraud, mail fraud, and wire fraud) in accordance with the particularity requirement of Fed.R.Civ.P. 9(b), warrants dismissal of the RICO claim. Rule 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b). To the extent plaintiffs allege fraudulent predicate acts under section 1961, Rule 9(b) is applicable to those allegations. *See Haroco, supra,* at 404–405; *Moss v. Morgan Stanley, supra,* at 19. However,

> Rule 9(b) must be read in conjunction with Rule 8 which contains the provisions creating the 'notice' pleading which is the hallmark of the federal rules. Rule 9(b) requires more than mere notice in cases of fraud; nevertheless, it is not to be construed and applied in a vacuum devoid of Rule 8's existence.

*Oliver v. Bostetter,* 426 F.Supp. 1082, 1089 (D.Md.1977). Thus, plaintiffs must "allege sufficiently specific facts to put the defendant[s] on notice of what the plaintiffs charge [they] did and the misrepresentations and omissions by which [they] did it." *Id.*

In the present case, the RICO allegations satisfy Rule 9(b) in all respects. Plaintiffs' amended complaint sets forth several omissions and misrepresentations upon which they base their claim. The complaint adequately alleges that the Mountainview and Newport offering memoranda falsely represented that the partnerships had obtained leasehold rights to the coal properties in time to qualify for favorable tax treatment and misrepresented the extent of the coal deposits to be mined by the partnerships. Complaint ¶¶ 40, 51, 70, & 72. Several other omissions and mistatements have been alleged, including misappropriation of funds by Cohen and the felony conviction of defendant Rosenbaum. Complaint ¶¶ 73 & 74. Taken as a whole, these allegations provide defendants with ample notice of the fraudulent acts constituting the predicate acts for the RICO claim. Moreover, plaintiffs have specified the role of Cohen in the fraudulent scheme, and as the agent or representative of Halajen, Mountainview, and Newport, his fraudulent acts performed within the scope of his authority are attributable to the other entities. Thus, the role of each defendant under Count I has been set forth with the requisite particularity. *See* Himelrich, *Pleading Securities Fraud,* 43 MD.L.REV. 342, 357 (1984).

In sum, the Court concludes plaintiffs have (1) sufficiently pleaded compliance with the three-year statute of limitations for RICO claims; (2) sufficiently pleaded all elements of a RICO claim; and (3) sufficiently pleaded fraud in connection with the predicate acts to satisfy Fed.R.Civ.P. 9(b).

**16.** Defendants' contention that plaintiffs must plead a nexus between defendants and organized crime merits little discussion. While several district courts have accepted this argument, "on the civil side, every circuit that has considered the issue ... has expressly rejected the notion that 'organized crime,' in any colloquial sense of the phrase, must be involved in order for RICO to be violated." *Haroco, supra,* at 394; *see also Moss v. Morgan Stanley, Inc.,* 719 F.2d 5, 21 & n. 17 (2d Cir.1983), *cert. denied sub nom., Moss v. Newman,* —— U.S. ——, 104 S.Ct. 1280, 79 L.Ed.2d 684 (1984).

Accordingly, defendants' motion to dismiss Count I will be denied.

### Count II

Count II of plaintiffs' amended complaint alleges a violation of sections 5(a), 12(1), and 15 of the Securities Act of 1933. 15 U.S.C. §§ 77e, 77*l* (1) & 77*o* (1982). Each of these sections concerns the sale of unregistered securities and fixes liability upon the offeror or seller of such unregistered securities or upon a person controlling an offeror or seller of unregistered securities. Count II is directed against defendants Cohen, Halajen, Mountainview, Newport, and Baker, Watts. In their motions to dismiss, defendants maintain that all of the causes of action in Count II are barred by the limitations periods contained in section 13 of the Securities Act of 1933. 15 U.S.C. § 77m (1982). It is therefore necessary, as a threshold matter, to determine the statute of limitations applicable to each of the claims in Count II.

Section 13 of the Securities Act of 1933 provides:

> No action shall be maintained to enforce any liability created under section 77k or 77*l* (2) of this title unless brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence, or, if the action is to enforce a liability created under section 77*l(1)* [12(1)] of this title, unless brought within one year after the violation upon which it is based. In no event shall any such action be brought to enforce a liability created under section 77k or 77*l*(1) [12(1)] of this title more than three years after the security was bona fide offered to the public, or under section 77*l*(2) of this title more than three years after the sale.

15 U.S.C. § 77m (1982). Thus, the limitations periods applicable to section 12(1) claims are one year from the date of the violation, and in no event, more than three years after the security was bona fide offered to the public. The one and three year provisions are cumulative, not alternative. *LeCroy v. Dean Witter Reynolds, Inc.,* 585 F.Supp. 753, 760 (E.D.Ark.1984); *Osborne v. Mallory,* 86 F.Supp. 869, 873–74 (S.D.N.Y.1949); III. Loss, SECURITIES REGULATION, ch. 11(c)(1)(f)(i) (2d ed. 1961) (hereinafter cited as III. Loss). Plaintiffs must establish that their section 12(1) claim was brought within one year of the alleged violation *and* within three years of the date the securities were bona fide offered to the public. *See LeCroy, supra.*

Sections 5(a) and 15, while not specifically addressed in section 13, have nevertheless been interpreted to fall within the auspices of the one and three year limitations periods. *See Herm v. Stafford,* 663 F.2d 669, 679 (6th Cir.1981); *LeCroy, supra,* at 757–58; *Sasso v. Koehler,* 445 F.Supp. 762, 763 (D.Md.1978). This interpretation is premised upon the relationship between sections 5, 12, and 15. Section 12(1) imposes liability upon any person who "offers or sells [an unregistered] security in violation of section 5." 15 U.S.C. § 77*l* (1) (1982). Similarly, "since the liability of the controlling person [under section 15], is joint and several with the controlled person, the same limitations period logically applies to the controlling person." *Herm v. Stafford, supra* at 679. In short, for purposes of the Count II claims for violations of section 5(a), 12(1), and 15, plaintiffs must plead and prove facts tending to show that the present action was commenced within one year of the violation upon which it is based *and* not more than three years after the security was bona fide offered to the public.

Although neither party has addressed the issue, it is important to determine when a security is "bona fide offered to the public" within the meaning of section 13. Several courts have addressed this issue and have differed as to whether it is the date the securities were *first* offered to the public or the date they were *last* offered. *Compare LeCroy, supra,* at 760 (first offered) *with In Re Bestline Products Securities and Antitrust Litigation,* [1974–75] CCH Fed.Sec.L.Rep. ¶ 95,070

(S.D.Fla.1975) (last offered). Although the difference appears minor, it can have substantial adverse consequences, including the expiration of a plaintiff's cause of action under section 12(1) before the cause of action actually accrues,[17] After careful consideration of the relevant authorities, the Court is persuaded that the three-year statute of limitations commences to run on the date the securities were *first* bona fide offered to the public. The clear weight of the authority supports this interpretation. *See, e.g., LeCroy, supra,* at 760 & n. 4; *Morse v. Peat, Marwick, Mitchell & Co.,* 445 F.Supp. 619, 620 (S.D.N.Y.1977).[18] Indeed, Professor Loss, in his treatise on securities regulation, concludes that the language of section 13 "presumably … means *first* offered to the public." III. Loss, *supra,* at 1742 (emphasis in original).

■ The Court next turns to the application of the limitation period to the instant case. Neither the complaint nor plaintiff's reply memoranda to defendants' motion sets forth the date upon which the Mountainview and Newport securities were first offered to the public. However, for purposes of the motion to dismiss, the Court will assume that plaintiffs were the first investors in Mountainview and Newport,[19] and that the statute of limitations began to

run in October 1976 on the Mountainview purchases and in November 1977 on the Newport purchases. The present action was commenced on December 7, 1983. It is readily apparent, therefore, that plaintiffs' claims for violation of sections 5, 12(1) and 15 are barred by the three-year statute of limitations. The present suit was instituted more than seven years after the first bona fide offering of the Mountainview securities and more than six years after the first bona fide offering of the Newport securities.

Nevertheless, plaintiffs urge this Court to apply the federal equitable tolling doctrine to toll the statute of limitations. "Federal law has long held that where fraud is involved in an action, at law or in equity, the statute of limitation is tolled." *Mid-Carolina Oil, Inc. v. Klippel,* 526 F.Supp. 694, 697 (D.S.C.1981), *aff'd,* 673 F.2d 1313 (4th Cir.), *cert. denied,* 457 U.S. 1107, 102 S.Ct. 2906, 73 L.Ed.2d 1315 (1982) (*citing Holmberg v. Armbrecht,* 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743 (1946)). The doctrine is

> invoked primarily in two situations: where fraud forms the basis of the federal cause of action; and where other nonfraud-based federal causes of action have been concealed by the tortfeasor. In

---

**17.** Assume, for example, that a security is first bona fide offered to the public on January 1, 1980. Sales of the security are slow and an individual buys a share on January 5, 1983. The next day he realizes the security is worthless. He remembers that he never received a prospectus. On January 6, 1983, he files suit pursuant to section 12(1), alleging violations of section 5. Under the literal reading of section 13, the investor's claim would be time-barred by the three-year limitation, irrespective of the fact that his claim is clearly within the one-year limitation period. *LeCroy, supra,* at 760 n. 5.

**18.** Several other courts have also adopted the "first offered" interpretation of section 13. *See Campito v. McManus,* 470 F.Supp. 986, 995 (E.D.N.Y.1979); *Fischer v. Int'l Telephone and Telegraph Corp.,* 391 F.Supp. 744, 747 (E.D.N.Y. 1975); *Ingenito v. Bermec Corp.,* 376 F.Supp. 1154, 1173 (S.D.N.Y.1974); *Kramer & Harrison v. Scientific Control Corp.,* 352 F.Supp. 1175, 1176 (E.D.Pa.1973); *Osborne v. Mallory,* 86 F.Supp. 869, 873 (S.D.N.Y.1949).

Apparently, only one court has specifically addressed the issue and adopted the "last offered" approach. *See* In Re Bestline Products Securities and Antitrust Litigation, [1974–75] CCH Fed.Sec.L.Rep. ¶ 95,070 at 97,751 (S.D.Fla. 1975). In *Cowsar v. Regional Recreations, Inc.,* 65 F.R.D. 394 (M.D.La.1974), the court concluded that the three-year limitations period commenced on the date of the "last sale." *Id.* at 396–97. However, the court did not specify whether this was the last sale to the plaintiff or the last sale of the security to the public. *Id.*

**19.** This assumption is most favorable to plaintiffs' case in that it postpones the commencement of the statute of limitations until the time plaintiffs actually purchased the securities. The alternative assumption would be that plaintiffs purchased their securities sometime after they were first offered to the public. In that case, the limitations period would have begun to run prior to plaintiffs' purchase. This would have resulted in a shorter period in which plaintiffs could have timely filed suit.

practical effect, the doctrine tolls the running of the applicable limitations period until the fraud or fraudulent concealment is (or should have been) discovered by the plaintiff.

*LeCroy, supra,* at 758 (citations omitted); *see Vanderboom v. Sexton,* 422 F.2d 1233, 1240 (8th Cir.), *cert. denied,* 400 U.S. 852, 91 S.Ct. 47, 27 L.Ed.2d 90 (1970). "The doctrine, however, must be applied in the light of the particular facts and circumstances...." *LeCroy, supra,* at 758.

In the instant action, several factors militate against the application of the doctrine. First, the causes of action under sections 5, 12(1), and 15 are not themselves in the nature of fraud. *See LeCroy, supra,* at 758–59; *Ingenito v. Bermec Corporation,* 441 F.Supp. 525, 553 n. 26 (S.D.N.Y.1977). Thus, plaintiffs must show that defendants fraudulently concealed the fact that the Mountainview and Newport securities were not registered. *Cf. Ingenito, supra.* Here, plaintiffs have made several allegations with respect to defendants' fraudulent concealment of material facts. Upon close inspection, however, it is clear that none of the allegations concern the concealment of the fact the securities were unregistered. Indeed, the subscription agreements for Mountainview and Newport securities each contained a specific provision informing the investor that the securities had not been registered under the Securities Act of 1933. (Cohen Affidavit Exhibits D–G.) Morley and Evans each signed a subscription agreement for Mountainview and Newport securities, and are therefore charged with the knowledge that the securities were unregistered.

Second, several courts have concluded that the three-year limitations period contained in section 13 is absolute, and the normal tolling rules are not applicable to toll the three-year period. *See, e.g., Admiralty Fund v. Hugh Johnson & Co., Inc.,* 677 F.2d 1301, 1308 (9th Cir.1982); *Summer v. Land & Leisure, Inc.,* 664 F.2d 965, 968 (5th Cir.1981), *cert. denied,* 458 U.S. 1106, 102 S.Ct. 3485, 73 L.Ed.2d 1367 (1982); *Brick v. Dominion Mortgage &*

*Realty Trust,* 442 F.Supp. 283, 291 (W.D.N.Y.1977). The unambiguous language of section 13 persuades this Court that the three-year period represents the outside limits for instituting suit under sections 5, 12, and 15, and expiration of that period precludes the application of the equitable tolling doctrine. Accordingly, the claims under sections 5(a), 12(1), and 15 are time-barred and will be dismissed.

## Count III

█ Count III of the amended complaint proceeds against all defendants and alleges violations of sections 12(2), 15, and 17(a) of the Securities Act of 1933, 15 U.S.C. §§ 77*l* (2), 77*o*, & 77q(a) (1982); and §§ 10(b), 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b) & 78t (1982); and Rule 10(b)(5). Defendants maintain that each of these alleged causes of action is time-barred by the applicable statute of limitations. Defendants further assert that Fourth Circuit case law establishing the existence of a private cause of action under section 17(a) of the 1933 Act should be reevaluated in light of recent Supreme Court decisions limiting judicial implication of private causes of action.

Turning first to the limitations issue, the Court concludes that plaintiffs' actions under section 12(2) and 15 are time-barred under section 13, 15 U.S.C. § 77m (1982). Section 13 provides that no action under section 12(2) may be brought more than one year after the discovery of the untrue statement or omission, or after such discovery should have been made by the exercise of reasonable diligence. Section 13 further provides that in no event shall an action under section 12(2) be maintained more than three years after the sale. As previously noted, plaintiffs must plead compliance with both the one-year and three-year provisions to state a claim under section 12(2). *See LeCroy, supra,* at 760; *Osborne v. Mallory,* 86 F.Supp. 869, 873–74 (S.D.N.Y.1949); III. Loss, *supra,* at 1742 n. 188. In the present case, plaintiffs have failed to adequately plead compliance with the three-year limitations period. The sale

of Mountainview and Newport securities took place in 1976 and 1977. This action was instituted in 1983—more than six years after the sale and more than three years after the expiration of the statute of limitations.

Similarly, plaintiffs' claims under section 15 must also be dismissed for failure to comply with the three-year provision contained in section 13. Although section 13 does not specifically reference section 15, its limitation periods have been held to apply with equal force to section 15 claims. *See Herm v. Stafford,* 663 F.2d 669, 679 (6th Cir.1981); *Sasso v. Koehler,* 445 F.Supp. 762, 763 (D.Md.1978). Accordingly, plaintiffs' section 15 claims are time-barred under the three-year provision.

Recognizing the untimeliness of their claims, plaintiffs again argue that the federal equitable tolling doctrine tolls the running of the three-year period until plaintiffs knew or should have known of defendants' fraud. Plaintiffs maintain that they did not know, nor should have known, of the fraud until 1983. Thus, plaintiffs reason, the present action, filed in 1983, is timely under both the one-year and three-year periods. As previously discussed, however, the three-year period represents the outside limit for bringing suit under sections 12 and 15, and expiration of that period precludes the application of the equitable tolling doctrine. *See, e.g., Summer v. Land & Leisure, Inc.,* 664 F.2d 965, 968 (5th Cir.1981), *cert. denied,* 458 U.S. 1106, 102 S.Ct. 3485, 73 L.Ed.2d 1367 (1982).

Plaintiffs' remaining Count III claims involve several difficult issues. Neither the Securities Act of 1933, nor the Securities Exchange Act of 1934, provide a statute of limitations for claims under section 17(a) (1933 Act) or sections 10(b), 20(a), and Rule 10(b)(5) (1934 Act). Therefore, the Court is required to apply an analogous statute of limitations of the forum state to the federal claims. *Holmberg v. Armbrecht,* 327 U.S. 392, 395, 66 S.Ct. 582, 584, 90 L.Ed. 743 (1946); *O'Hara v. Kovens,* 625 F.2d 15, 17 (4th Cir.1980), *cert. denied,* 449 U.S. 1124, 101 S.Ct. 939, 67 L.Ed.2d 109 (1981). "The implied absorption of State statutes of limitation within the interstices of the federal enactments is a phase of fashioning remedial details where Congress has not spoken but left matters for judicial determination within the general framework of familiar legal principles." *Holmberg v. Armbrecht, supra,* 327 U.S. at 395, 66 S.Ct. at 584.

The Fourth Circuit and this Court have concluded that Maryland's blue sky law is most analogous to the federal securities laws. Thus, the Courts have consistently applied the limitations periods contained in MD.CORPS. & ASS'NS CODE ANN. § 11–703(f) to actions under sections 17(a), 10(b), and Rule 10(b)(5). *See, e.g., O'Hara v. Kovens, supra,* (§ 10(b) ); *Fox v. Kane-Miller Corporation,* 542 F.2d 915, 918 (4th Cir.1976) (Rule 10(b)(5) ); *Sasso v. Koehler,* 445 F.Supp. 762, 768 (D.Md.1978) (§ 17(a), § 10(b), and Rule 10(b)(5); *cf. Newman v. Prior,* 518 F.2d 97, 99 (4th Cir.1975) (Virginia blue sky law applicable to § 17(a) claims). Furthermore, because liability of controlling persons under section 20(a) is derived from the liability of the controlled person, the same limitation period should apply to section 20(a) violations as that which applies to those provisions allegedly violated by the controlled person. *Cf. Herm v. Stafford, supra.* In the present case, therefore, the limitations periods contained in section 11–703(f) also apply to plaintiffs' claims under section 20(a) of the Securities Exchange Act of 1934.

Section 11–703(f) provides in pertinent part:

(1) A person may not sue under this section after the earlier to occur of three years after the contract of sale or purchase or

(2) ...

(ii) ... one year after the discovery of the untrue statement or omission, or after the discovery should have been made by the exercise of reasonable diligence.

MD.CORPS. & ASS'NS CODE ANN. § 11–703(f) (1975 & Cum.Supp.1984).

Accepting *arguendo* plaintiffs' contention that they could not have discovered defendants' fraud until 1983, plaintiffs claims are nevertheless time-barred under the three-year provision of section 11–703(f)(2)(ii). This suit was instituted more than seven years after the contract of sale of the Mountainview securities and more than six years after the contract of sale of the Newport securities.

Plaintiffs again argue, however, that the federal equitable tolling doctrine tolls the running of section 11–703(f) until plaintiffs knew or should have known of defendants' fraud. Plaintiffs' argument raises the

question: To what extent do federal tolling provisions govern the running of state statutes of limitation "borrowed" for federal actions cognizable only in federal courts? "Without launching into an exegesis on the nice distinctions that have been drawn in applying state and federal law in this area, ... it suffices to say that [plaintiffs have] overstated [their] case." *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 463, 95 S.Ct. 1716, 1721, 44 L.Ed.2d 295 (1975) (footnotes omitted). Whether or not the federal equitable tolling doctrine generally tolls a state statute of limitations borrowed for a federal cause of action,[20] the

**20.** In *Holmberg v. Armbrecht*, 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743 (1946), the Supreme Court concluded that the equitable tolling doctrine, first enunciated in *Bailey v. Glover*, 88 U.S. (21 Wall.) 342, 22 L.Ed. 636 (1874), is read into every federal statute of limitations, and should therefore be applied to state statutes of limitations borrowed for federal actions. 327 U.S. at 397, 66 S.Ct. at 585. "It would be too incongruous to confine a federal right within the bare terms of a State statute of limitation unrelieved by the settled federal equitable doctrine as to fraud, when even a federal statute in the same terms would be given the mitigating construction required by that doctrine." *Id.*

In *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975), the Supreme Court seemingly contradicted *Holmberg* when it determined that in borrowing state statutes of limitations for federal actions, federal courts should also borrow state tolling provisions. The Court reasoned:

Any period of limitation ... is understood fully only in the context of the various circumstances that suspend it from running against a particular cause of action. Although any statute of limitations is necessarily arbitrary, the length of the period allowed for instituting suit inevitably reflects a value judgment concerning the point at which the interests in favor of protecting valid claims are outweighed by the interests in prohibiting the prosecution of stale ones. In virtually all statutes of limitations the chronological length of the limitation period is interrelated with provisions regarding tolling, revival, and questions of application. In borrowing a state period of limitation for application to a federal cause of action, a federal court is relying on the State's wisdom in setting a limit, and exceptions thereto, on the prosecution of a closely analogous claim.
....
... Although state law is our primary guide in this area, it is not, to be sure, our exclusive guide.... [C]onsiderations of state law may

be displaced where their application would be inconsistent with the federal policy underlying the cause of action under consideration. 421 U.S. at 463–65, 95 S.Ct. at 1721–22.

In the wake of *Holmberg* and *Railway Express,* courts have applied both decisions seemingly inconsistently, thus compounding the confusion. One court, noting the considerable flux in the law generated by these decisions, chose to rest its holding on alternative grounds of federal and state tolling doctrines. *Hobson v. Wilson,* 737 F.2d 1, 33 n. 100 (D.C.Cir.1984). In *Newman v. Prior,* 518 F.2d 97 (4th Cir.1975), an action under § 17(a), the court cited *Holmberg* in support of the proposition that "[e]ven when state law furnishes the period of limitation, federal law controls its commencement. The statute does not begin to run until the fraud is either actually known or should have been discovered by the exercise of due diligence." *Id.* at 100. Other courts have adopted a similar position based on *Holmberg. Bireline v. Seagondollar,* 567 F.2d 260, 263 (4th Cir.1977), *cert. denied,* 444 U.S. 842, 100 S.Ct. 83, 62 L.Ed.2d 54 (1979); *see, e.g., Jaffray & Hopwood, Inc.,* 414 F.Supp. 475, 484 (D.Minn.1976); *O'Hara v. Kovens,* 473 F.Supp. 1161, 1166 (D.Md.1979), *aff'd,* 625 F.2d 15 (4th Cir.1980). *But see O'Hara v. Kovens,* 625 F.2d 15, 19 (4th Cir.1980), *cert. denied,* 449 U.S. 1124, 101 S.Ct. 939, 67 L.Ed.2d 109 (1981) (Maryland blue sky law does not provide for tolling of limitations period due to incompetence, and in absence of circumstances warranting applications of federal equitable relief, *Railway Express* precludes federal court from tolling for incompetence). The Fourth Circuit's position in this matter was recently reaffirmed in *Gurley v. Documation Incorporated,* 674 F.2d 253 (4th Cir.1982). There, Chief Judge Winter, in applying a Virginia statute of limitations to plaintiffs' § 10(b) claim, concluded that dismissal on the basis of the statute of limitations was premature, inasmuch as plaintiff might have been able to establish that "he could not reasonably have expected to discover the alleged fraud earlier than he did." *Id.* at

doctrine has no application to the facts of this case for several reasons.

Section 11–703(f) provides the limitations periods for several provisions of the Maryland blue sky law, including actions for the sale of unregistered securities, section 11–501, and actions for the sale of securities by means of any untrue statement of a material fact, section 11–703(a)(1)(ii). In this respect, section 11–703(f) is strikingly similar to section 13 of the Securities Act of 1933. Indeed, section 13 also provides the limitations period for claims arising from the sale of unregistered securities, section 12(1), and the sale of securities by means of any untrue statement of a material fact, section 12(2). Moreover, the limitations periods contained in both statutes are virtually identical. Actions for the sale of securities by means of an untrue statement of material fact are subject to the one-year and three-year provisions of section 11–703(f) under state law, and the same one-year and three-year provisions of section 13 under federal law. Both statutes commence the running of the one-year period from the date the untrue statement or omission was discovered, or should have been discovered by the exercise of reasonable diligence, and the three-year period from the date of sale. Under both statutes, the one-year and three-year periods are cumulative, not alternative. A cause of action must be timely under both periods or it is time-barred. *See LeCroy v. Dean Witter Reynolds, Inc.,* 585 F.Supp. 753, 760 (E.D.Ark.1984) (section 13); *cf. O'Hara v. Kovens,* 60 Md.App. 619, 484 A.2d 275, 276–77 (1984) (section 11–703(f) ).

In the absence of any Maryland decisions interpreting section 11–703(f) in its present form, the similarity between the state and federal provisions convinces this Court that the decisions interpreting section 13 are relevant to any interpretation of section 11–703(f). In particular, the Court is concerned with those decisions which have con-

cluded that Congress intended the three-year provision in section 13 to be an absolute limitation, the running of which cannot be tolled by the equitable tolling doctrine. *See, e.g., Admiralty Fund v. Hugh Johnson & Company, Inc.,* 677 F.2d 1301, 1308 (9th Cir.1982); *Summer v. Land Leisure, Inc.,* 664 F.2d 965, 968 (5th Cir.1981), *cert. denied,* 458 U.S. 1106, 102 S.Ct. 3484, 73 L.Ed.2d 1367 (1982). *But see In Re Home-Stake Production Company Securities Litigation,* 76 F.R.D. 337, 344–45 (N.D.Okl. 1975). The Court concludes, therefore, that the three-year period contained in section 11–703(f) is also an absolute outside limit on commencing suit under Maryland's blue sky law.

This position is buttressed by the anomalous situation which would result from application of the equitable tolling doctrine to section 11–703(f). Essentially, under plaintiffs' theory, the statute would read:

A person may not sue under this section after the earlier to occur of (1) three years after the discovery of the untrue statement or omission, or after the discovery should have been made by the exercise of reasonable diligence; or (2) one year after the discovery of the untrue statement or omission, or after the discovery should have been made by the exercise of reasonable diligence.

The absurdity of this interpretation is manifest. It has the effect of rendering the state statute of limitations null and void, inasmuch as the three-year period will never come into play. Under the present Gregorian calendar system, one year from discovery will *always* occur earlier than three years from discovery.

The Court cannot and will not countenance a result such as this, which essentially renders the borrowing of the state statute meaningless. Accordingly, the Court concludes that plaintiffs' claims under sections 17(a), 10(b), and 20(a), and

259. While the court did not specifically apply the equitable tolling doctrine, the langauge quoted above is unmistakably drawn from the doctrine. The court implicitly applied the doctrine although it left the determination of whether

plaintiff had satisfied the requirements to the jury. *Id.* Thus, it appears, in the Fourth Circuit at least, that the federal equitable tolling doctrine does toll a state statute of limitations borrowed for a federal cause of action.

Rule 10(b)(5) are time-barred under the three-year statute of limitation contained in MD.CORPS. & ASS'NS CODE ANN. § 11–703(f).[21]

### Pendent Jurisdiction

Before turning to the state law claims, it is necessary to determine what, if any, effect the dismissal of two of the three federal claims will have upon the Court's exercise of pendent jurisdiction over the state claims. The lone remaining federal claim is the RICO count. This claim proceeds only against Cohen, Halajen, Mountainview, and Newport. The state law claims which proceed against these defendants all arise out of the same alleged acts which constitute the predicate acts for the RICO claims. To succeed on the RICO claim plaintiffs will necessarily have to establish the commission of the predicate acts. Much of this proof will be directly applicable to the state law claims against Cohen, Halajen, Mountainview, and Newport. Accordingly, under the standards enunciated in *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), this Court concludes that exercise of pendent jurisdiction is fully justified with respect to Counts IV–VIII and XIII–XIV.

■ The state claims against the other defendants present a more difficult issue. There are no remaining federal claims against SWG & M, the individual partners of SWG & M, DiGuilan & DiChiara, Sidney Bernstein, Zayle Bernstein, Marvin Rosenbaum, or Baker, Watts. Several defendants have argued that the elimination of the federal claims destroys the Court's pendent jurisdiction over the state law claims. However, the principles of pendent party jurisdiction persuade this Court otherwise. Closely analogous to pendent claim jurisdiction, pendent party jurisdiction permits, under certain circumstances, a federal court to exercise jurisdiction over state law claims against a defendant who is not a

party to the federal claim pending before the court. *See generally Aldinger v. Howard*, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976). Although the *Aldinger* Court declined to apply pendent party jurisdiction on the facts of the case, the court intimated that, under certain circumstances, pendent party jurisdiction would be appropriate. *Id.*

■ After a careful analysis of *Aldinger*, Chief Judge Kaufman, of this Court, recently established a three-part test for the exercise of pendent party jurisdiction. *See Lee Construction Co., Inc. v. Federal Reserve Bank of Richmond*, 558 F.Supp. 165 (D.Md.1982). First, the Court must establish that it has constitutional power under Article III to entertain the claim against the pendent party. *Id.* at 170. Such power "exists whenever there is a claim 'arising under ...' [federal law] and the relationship between that claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional 'case.'" *Id.* at 171 (*quoting United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966)). For such a relationship to exist:

> The federal claim must have substance sufficient to confer subject matter jurisdiction on the court.... The state and federal claims must derive from a common nucleus of operative fact. But if, considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues there is *power* in federal courts to hear the whole.

*United Mine Workers v. Gibbs, supra*, at 725, 86 S.Ct. at 1138 (citation and footnote omitted; emphasis in original). Next, the "federal court must satisfy itself not only that Art. III permits it, but that Congress in the statutes conferring jurisdiction has not expressly or by implication negated its

---

**21.** In light of the Court's conclusion that plaintiffs' action under § 17(a) is time-barred, it is unnecessary to address defendants' arguments

that § 17(a) does not provide a private cause of action.

existence." *Lee Construction, supra,* at 171 (*quoting Aldinger v. Howard,* 427 U.S. at 18, 96 S.Ct. at 2422). Finally, because the exercise of pendent party jurisdiction is discretionary, factors such as judicial economy, convenience, and fairness to the litigants, play an important role in determining whether the court should exercise such jurisdiction. *Lee Construction, supra,* at 171; *Aldinger, supra,* 427 U.S. at 18, 96 S.Ct. at 2422; *United Mine Workers, supra,* 383 U.S. at 726, 86 S.Ct. at 1139.

■ Pursuant to the test enunciated in *Lee Construction,* this Court concludes that the facts of the present case warrant the exercise of pendent party jurisdiction over the state claims against the defendants. Here, the federal and state claims all arise out of a common nucleus of operative fact—the fraudulent sale of securities. Proof of the fraudulent scheme will be sufficiently applicable to both the federal and state claims so that it is reasonable to try all the claims in one forum. Moreover, because RICO establishes exclusive jurisdiction in the federal courts, 18 U.S.C. § 1965(a), the federal court is the only forum in which all of the claims can be tried together. *See Aldinger, supra,* 427 U.S. at 18, 96 S.Ct. at 2422. Similarly, nothing in RICO expressly or implicitly negates the existence of pendent party jurisdiction. Finally, the Court concludes that the interests of judicial economy and convenience warrant the exercise of jurisdiction over the state claims against those defendants not party to the RICO count. To relegate the state law claims to a separate state court would cause needless repetition of judicial proceedings. Additionally, separate federal and state lawsuits would result in added time and costs to the litigants without any concomitant benefits. Under these circumstances, the exercise of pendent party jurisdiction over the state claims against the remaining defendants is particularly appropriate.

■ Having concluded that it has subject matter jurisdiction over all the state law claims under the doctrines of pendent claim and pendent party jurisdiction, the Court next examines the extent of its *in personam* jurisdiction over the defendants on the state claims. Defendants Cohen, Halajen, Mountainview, and Newport argue that, while RICO and the federal securities laws broadly permit the exercise of *in personam* jurisdiction over persons who have allegedly violated the acts, "those provisions do not automatically afford jurisdiction over the same defendants for accompanying state law claims...." Paper No. 25 at 45. These defendants maintain that plaintiffs must "plead a factual basis for the exercise of long-arm jurisdiction over the defendants on [the] state law claims, regardless of whether those are asserted independently or are accompanied by federal claims." *Id.* While there is some authority for this position, *see Wilensky v. Standard Beryllium Corp.,* 228 F.Supp. 703, 705–06 (D.Mass.1964), there is ample authority for the extension of the personal jurisdiction obtained over these defendants under the federal claims to the related state claims. *See, e.g., International Controls Corp. v. Vesco,* 593 F.2d 166, 175 n. 5 (2d Cir.), *cert. denied,* 442 U.S. 941, 99 S.Ct. 2884, 61 L.Ed.2d 311 (1979); *Robinson v. Penn Central Co.,* 484 F.2d 553, 555–56 (3d Cir.1973); *Piper Acceptance Corp. v. Slaughter,* 600 F.Supp. 169, 171–72 (D.Colo.1985). The Court finds the reasoning of the latter cases persuasive. When the federal court properly asserts *in personam* jurisdiction over these defendants under the federal statute, it may likewise exercise *in personam* jurisdiction over the same defendants in deciding pendent state claims. Therefore, the Court has personal jurisdiction over Cohen, Halajen, Mountainview, and Newport with respect to both the federal and state claims.

■ The absence of any federal claims against the remaining defendants presents a more difficult question with respect to personal jurisdiction. It is a basic tenet of American jurisprudence that a court must have personal jurisdiction over the defendant to render a judgment personally binding him and entitled to full faith and credit. *See World-Wide Volkswagen*

*Corp. v. Woodson,* 444 U.S. 286, 291, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980); *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). The plaintiff bears the burden of alleging and proving facts justifying the exercise of personal jurisdiction. *See McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936); *McLaughlin v. Copeland,* 435 F.Supp. 513, 530 (D.Md.1977). In the present action, plaintiffs assert two alternative grounds for personal jurisdiction over SWG & M, the individual partners, DiGuilan & DiChiara, Sidney Bernstein, Zayle Bernstein, Marvin Rosenbaum, and Baker, Watts. First, plaintiffs maintain that service of process pursuant to the nationwide service provisions of the Securities Acts and RICO is sufficient to obtain personal jurisdiction over these defendants. Plaintiffs argue that personal jurisdiction obtained by means of the nationwide service of process survives the dismissal of the federal claims and is applicable to the state claims against the pendent party defendants. This argument raises serious constitutional questions regarding the requirements of due process inherent in the exercise of personal jurisdiction. In *International Shoe,* the Supreme Court concluded that the Due Process Clause "does not contemplate that a state may make binding a judgment *in personam* against an individual or corporate defendant with which the state has no contacts, ties, or relations." 326 U.S. 310, 319, 66 S.Ct. 154, 160, 90 L.Ed. 95 (1945). Acceptance of plaintiffs' position would impermissably enable a plaintiff to haul a pendent party defendant into a foreign jurisdiction with which he has no contacts, simply by asserting a frivolous federal claim which permits nationwide service of process. The inevitable dismissal of the federal claim would matter little to the plaintiff inasmuch as he would already have obtained personal jurisdiction

over the pendent party defendant on the state claims. Clearly, this violates the principles of due process and cannot be countenanced by this Court. Accordingly, the Court concludes that plaintiffs must plead and prove sufficient facts to establish a basis for personal jurisdiction independent of the nationwide service of process provisions of the previously dismissed federal claims.

Plaintiffs have alleged sufficient facts to demonstrate an independent basis for jurisdiction over Baker, Watts. Baker, Watts is a licensed Maryland broker-dealer. Baker, Watts maintains extensive business operations in Maryland and was served with process in Maryland. As such, the Court concludes that it is fully justified in exercising *in personam* jurisdiction over the Baker, Watts defendants.

As to the nonresident pendent party defendants, plaintiffs argue that the Maryland long-arm statute confers personal jurisdiction. MD.CTS. & JUD.PROC.CODE ANN. § 6–103 (1984). If plaintiffs adequately establish the applicability of any provision of section 6–103, this would, of course, qualify as a basis of jurisdiction independent of the nationwide service of process and would permit this Court to validly exercise personal jurisdiction.

> [D]etermining the applicability of section 6–103 to a particular fact situation is a two-step process. First, it must be determined if the defendant is within the ambit of the statute itself. If the court decides that the statute will permit service on the defendant, it then must determine if such service satisfies the constitutional demands of due process.

*Holfield v. Power Chemical Company,* 382 F.Supp. 388, 390 (D.Md.1974).

In their reply memorandum to SWG & M's motion to dismiss, plaintiffs apparently seek to establish long-arm jurisdiction under section 6–103(b)(4).[22] In their reply,

---

22. Section 6–103(b)(4) permits a court to exercise personal jurisdiction over a person who directly or by an agent:
 (4) Causes tortious injury in the State or outside the State if he regularly does or solicits

business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State.

plaintiffs assert for the first time that SWG & M "derived substantial revenue in 1976 in terms of legal fees from the opinion letters it furnished for these investment offerings." Paper No. 41 at 9–10.[23] However, careful consideration of all the allegations in the present action indicate that section 6–103(b)(4) is inapplicable. The pendent party defendants earned their fees outside the State of Maryland. SWG & M and Marvin Rosenbaum prepared their written materials in New York for their New York client—Cohen. DiGuilan & DiChiara and the Bernsteins prepared their opinion letter in Florida for their New York client—Cohen. All fees for services rendered were earned outside Maryland. Only later did Cohen, Halajen, Mountainview, and Newport introduce the materials prepared by the pendent party defendants into Maryland as part of the offering circulars. The pendent party defendants received no additional revenues for the independent introduction of their work products into this state. Regardless of where, when, or how Cohen used the opinion letters, the other defendants received no further revenue other than the initial fees for the preparation of the opinions. "[W]hatever marginal revenues petitioners may receive by virtue of the fact that their products are capable of use in [Maryland] is far too attenuated a contact to justify that State's exercise of *in personam* jurisdiction over them." *World-Wide Volkswagen, supra,* 444 U.S. at 299, 100 S.Ct. at 568. Under these circumstances, the Court cannot conclude that the activities of the pendent party defendants fall within the purview of section 6–103(b)(4). Accordingly, that section provides no basis for the exercise of *in personam* jurisdiction over the pendent party defendants.

Having concluded that the Maryland long-arm statute is inapplicable to the in-

stant case, it would ordinarily be unnecessary for the Court to engage in the second inquiry outlined in *Holfield v. Power Chemical Company*— whether service under the long-arm statute meets the "constitutional demands of due process." 382 F.Supp. at 390. However, in the interests of clarity, the Court will assume *arguendo* that the activities of the pendent party defendants satisfy section 6–103(b)(4). The question then becomes whether application of that section to the facts in the present case is constitutionally permissible. The Court concludes that it is not.

As noted previously, *International Shoe* teaches that the requirements of due process prohibit the exercise of *in personam* jurisdiction over a defendant with which the state has no contacts, ties, or relations. 326 U.S. at 319, 66 S.Ct. at 159; *see also World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 294, 100 S.Ct. 559, 565, 62 L.Ed.2d 490 (1980). In the present case, there are no allegations that SWG & M, the individual partners, DiGuilan & DiChiara, Sidney Bernstein, Zayle Bernstein, or Marvin Rosenbaum have or had any contacts whatsoever with the State of Maryland. Each of these defendants performed services outside Maryland for a New York client. None of these defendants is alleged to have conducted any business in the state, solicited any business in the state, or maintained any clients in Maryland. In short, plaintiffs have not established any contacts, ties, or relations between these defendants and the State of Maryland.

Plaintiffs further maintain, however, that the introduction of the defendants' work products into Maryland by Cohen constitute sufficient contact with the state to support personal jurisdiction. The mere "unilateral activity of those who claim some relationship with a nonresident de-

---

MD.CTS. & JUD.PROC.CODE ANN. § 6–103(b)(4) (1984).

**23.** Although plaintiffs' argument addresses only the revenues allegedly earned by SWG & M, it is clear from the entirety of the memorandum that these allegations also pertain to DiGuilan & DiChiara. Additionally, plaintiffs have opposed the motion of the individual partners of SWG &

M. That opposition merely adopts by reference the arguments in opposition to SWG & M's motion to dismiss. Paper No. 51. For purposes of this case, the Court will assume that plaintiffs oppose the motions of Sidney Bernstein, Zayle Bernstein, and Marvin Rosenbaum upon the same arguments.

fendant cannot satisfy the requirement of contact with the forum State." *World-Wide Volkswagen, supra,* at 298, 100 S.Ct. at 567 (*quoting Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958)). Plaintiffs' allegations establish that Cohen alone was responsible for the introduction into Maryland of the offering circulars containing the opinion letters. The pendent party defendants were not involved in the decision to pursue sales of Mountainview and Newport units in Maryland, and these defendants took no affirmative steps to assist in the sales in Maryland. Accordingly, the mere distribution of the offering circulars in Maryland by a party wholly unrelated to these defendants does not satisfy the "minimum contacts" requirement set forth in *International Shoe.* Thus, even if the Maryland long-arm statute was applicable to the facts of this case, service of process pursuant to that statute would offend the constitutional principles of due process. The Court concludes therefore that plaintiffs have failed to establish any valid basis for the exercise of personal jurisdiction over SWG & M, the individual partners, DiGuilan & DiChiara, Sidney Bernstein, Zayle Bernstein, or Marvin Rosenbaum. All state claims pending against these defendants will be dismissed. The Court further concludes that it does have personal jurisdiction over Cohen, Halajen, Mountainview, Newport, and Baker, Watts. The state claims pending against those defendants are discussed below.

### Count IV

In Count IV, defendants Cohen, Halajen, Mountainview, Newport, and Baker, Watts are sued jointly and severally for alleged violations of sections 11–205, 11–501, and 11–703 [24] of the Maryland Securities Act. MD.CORPS. & ASS'NS CODE ANN. § 11–101 *et seq.* (1975 & 1984 Cum. Supp.) As part of Maryland's blue sky law, these sections require the filing of sales literature concerning a sale of securities and the registration of securities prior

to sale. Defendants maintain these claims are time-barred under the limitations periods contained in section 11–703(f). Plaintiffs, as with each of the preceding counts, maintain that the limitations period does not begin to run until they discovered or should have discovered defendants' fraud. Plaintiffs maintain that discovery of the fraud occurred in early 1983, and suit was filed in December of 1983, well within any time limit contained in section 11–703(f).

Section 11–703(f) contains two limitations periods directly applicable to the Count IV claims. That section provides in pertinent part:

(1) A person may not sue under [section 11–703] after the earlier to occur of three years after the contract of sale or the time specified in paragraph (2) of this subsection.

(2) An action may not be maintained:

(i) To enforce any liability created under subsections (a)(1)(i) or (a)(2)(i) of this section, unless brought within one year after the violation on which it based....

MD.CORPS. & ASS'NS CODE ANN. § 11–703(f) (1984 Cum.Supp.) As the Court noted in Count III, the three-year and one-year periods are cumulative. Plaintiffs' action must be timely under both provisions or it is time-barred. *Cf. O'Hara v. Kovens,* 60 Md.App. 619, 484 A.2d 275, 276–77 (1984).

In the instant action, plaintiffs' Count IV claims are untimely under both periods. More than six years have passed between the time plaintiffs signed the contracts of sale for Mountainview and Newport securities and the commencement of this action, far exceeding the three-year period. Furthermore, the sale of unregistered securities, in violation of section 11–205, 11–501, and 11–703, also occurred on the date of the sales in 1976 and 1977. Accordingly, under the one-year provision, suit under these sections was time-barred in 1977 on the Mountainview securities and 1978 on the Newport securities.

---

**24.** Although plaintiffs do not specify which section of 11–703 defendants allegedly violated, the Court assumes 11–703(a)(1)(i) is the applicable section, inasmuch as that section imposes civil liability for violations of §§ 11–205 and 11–501 which are the gravamen of Count IV.

Recognizing the untimeliness of their claims, plaintiffs contend that the three-year and one-year periods should be tolled until plaintiffs discovered or should have discovered defendants' fraud. The Court finds no merit in this argument. As the Court previously noted in connection with the Count III claims, the three-year period was intended as an absolute limitation which is not subject to normal Maryland tolling provisions. Even assuming that both limitations periods are subject to tolling, no Maryland tolling provisions are applicable to section 11–703. Maryland's general tolling provision for fraudulent concealment of a cause of action is contained in the Annotated Code of Maryland, Courts and Judicial Proceedings section 5–203. This provision, however, is only applicable to toll the general statute of limitations found in the Annotated Code of Maryland, Courts and Judicial Proceedings section 5–101. *O'Hara v. Kovens*, 473 F.Supp. 1161, 1167 (D.Md.1979), *aff'd*, 625 F.2d 15 (4th Cir.1980), *cert. denied*, 449 U.S. 1124, 101 S.Ct. 939, 67 L.Ed.2d 109 (1981). Additionally, the discovery of the wrong rule adopted by the Maryland Court of Appeals in *Poffenberger v. Risser*, 290 Md. 631, 431 A.2d 677 (1981), is inapplicable to section 11–703(f). *Mills v. International Harvester Co.*, 554 F.Supp. 611, 613 (D.Md.1982). Plaintiffs have offered no other possible tolling provisions applicable to section 11–703(f). Accordingly, plaintiffs' Count IV claims will be dismissed as untimely.

### Count V

■ In light of the Court's previous ruling with respect to personal jurisdiction over the pendent party defendants, Count V now proceeds only against Cohen, Halajen, Mountainview, Newport, and Baker, Watts for alleged violations of sections 11–301 and 11–703(a)(1)(ii) of the Maryland Securities Act. MD.CORPS. & ASS'NS CODE ANN. § 11–101 *et seq.* (1975 & 1984 Cum.Supp.). Essentially, these sections prohibit the sale of securities by means of fraud, untrue statements of material facts, or omissions of material facts.

Defendants argue that these claims are time-barred under the one-year limitation period in section 11–703(f). Plaintiffs again maintain that the claims were interposed within the requisite time period following the discovery of the defendants' fraud.

While section 11–703(f) applies the same three-year period to actions brought under the antifraud provisions of 11–703 and 11–301,[25] the applicable one-year period varies from that applied to the Count IV claims, in that it begins to run from the date of discovery of the untrue statement or omission, or the date discovery should have been made by the exercise of reasonable diligence. This variation has little significance in the present case, because plaintiffs' Count V claims are untimely under the absolute three-year limitation period. As previously discussed, no tolling provisions are applicable to the three-year period. Accordingly, the Count V claims will be dismissed as untimely.

### Counts VI through XVI

To understand the variety of common-law claims asserted in Counts VI through XVI and the myriad of defendants involved in each count, a chart is helpful.

| Count | Claim | Defendants |
|-------|-------|------------|
| VI | Negligent Misrepresentation | All |
| VII | Breach of Fiduciary Duty | All |
| VIII | Breach of Contract | Cohen, Halajen, Mountainview & Newport |

25. The limitation periods contained in § 11–703(f)(1) & (2)(ii) are not made directly applicable to violations of § 11–301. The Court concludes, however, that the similarity between the rights protected by § 11–703(a)(1)(ii) and § 11–301, as well as the similarity in language between both sections, makes it reasonable to conclude that the same limitation periods should apply to both sections. Thus, the three-year and one-year periods applicable to § 11–703(a)(1)(ii) claims are equally applicable to claims under § 11–301.

| Count | Claim | Defendants |
|-------|-------|------------|
| IX | Professional Negligence | SWG&M |
| X | Professional Negligence | DD, ZB, & SB |
| XII | Professional Negligence | Rosenbaum |
| XIII | Conversion | Cohen and Halajen |
| XIV | Fraud | Cohen |
| XV | Negligence | Baker, Watts |
| XVI | Fraud | Baker, Watts |

Those claims contained in Counts VI and VII which are asserted against the pendent party defendants over which the Court does not have personal jurisdiction will be dismissed together with the entirety of Counts IX, X, AND XII.

In their motions to dismiss, the remaining defendants argue that the New York choice of law provision contained in the subscription agreements is enforceable in Maryland; thereby necessitating application of the New York statutes of limitations to the common-law claims. Defendants maintain that the common-law claims are time-barred under the applicable New York statutes of limitations. Plaintiffs maintain that the substantial Maryland interests in adjudicating the present action preclude adherence to the New York choice of law provisions and necessitates application of the Maryland statutes of limitations. It is thus necessary to determine whether Maryland or New York law provides the limitations periods for the common-law claims.

 It is well settled that "[f]ederal courts, when exercising their diversity or pendent jurisdiction over state law claims, must of course, apply choice of law rules applicable in the forum state." *Itco Corporation v. Michelin Tire Corporation,* 722 F.2d 42, 49 n. 11 (4th Cir.1983) (*citing Klaxon Co. v. Stentor Electric Manufacturing Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941)), *aff'd on rehearing,* 742 F.2d 170 (1984), *cert. denied,* — U.S —, 105 S.Ct. 1191, 84 L.Ed.2d 337 (1985). *See also Colgate Palmolive Company v. S/S Dart Canada,* 724 F.2d 313, 316 (2d Cir. 1983), *cert. denied,* — U.S. —, 104 S.Ct. 2181, 80 L.Ed.2d 562 (1984); *Rohm and*

*Haas Company v. Adco Chemical Company,* 689 F.2d 424, 429 (3d Cir.1982). Accordingly, Maryland choice of law rules apply to the instant action. Except where contrary to public policy, Maryland has embraced the principle that the parties to a contract may validly include a choice of law provision specifying the law to be applied to the contracts. *See, e.g., Kronovet v. Lipchin,* 288 Md. 30, 415 A.2d 1096, 1104–05 (1980). Predictably, the parties utilize both sides of the public policy debate in support of their arguments concerning the application of the New York statutes of limitations. The Court, however, finds a determination of Maryland public policy unnecessary to the resolution of the issue. Maryland courts have consistently concluded that, while choice of law rules may mandate application of another state's substantive law, "statutes of limitation are considered procedural in nature, and as to limitations, the law of the forum is applied." *Leonard v. Wharton,* 268 F.Supp. 715, 718 (D.Md.1967), *appeal dismissed,* 396 F.2d 452 (4th Cir.1968), *cert. denied,* 393 U.S. 1028, 89 S.Ct. 624, 21 L.Ed.2d 571 (1969); *see also Mills v. International Harvester Co.,* 554 F.Supp. 611, 612 (D.Md. 1982); *Doughty v. Prettyman,* 219 Md. 83, 88, 148 A.2d 438, 440 (1959). Thus, regardless of whether New York law will apply to the common-law claims at a later stage in this litigation, the Maryland statute of limitations determines the timeliness of the claims.

 Maryland's general three-year statute of limitations applies to each of the common-law claims. That provision provides: "A civil action at law shall be filed within three years from the date it ac-

crues...." MD.CTS. & JUD.PROC.CODE ANN. § 5–101 (1984). In determining the date of accrual, two Maryland tolling provisions are significant. First, MD.CTS. & JUD.PROC.CODE ANN. § 5–203 provides that "[i]f a party is kept in ignorance of a cause of action by the fraud of an adverse party, the cause of action shall be deemed to accrue at the time when the party discovered, or by the exercise of ordinary diligence should have discovered the fraud." Second, in *Poffenberger v. Risser, supra,* the Court of Appeals of Maryland determined that the discovery rule was "applicable generally in all actions and the cause of action accrues when the claimant in fact knew or reasonably should have known of the wrong." *Id.* 290 Md. at 636, 431 A.2d 677. For a thorough discussion of the historical application of the discovery rule, see Comment, *Poffenberger v. Risser—The Discovery Principle is the Rule, not the Exception,* 41 MD.L.REV. 451 (1982).

The two tolling rules discussed above establish that the three-year limitation period on each of the common-law claims in Counts VI through XVI begins to run when plaintiffs discovered or should have discovered the wrong giving rise to the cause of action. Plaintiffs, maintain the operative date is May 1983 while defendants argue that the limitations periods began to run in February 1981. Assuming *arguendo* that defendants are correct, the three-year period on the common-law claims expired in February 1984, two months after plaintiffs filed suit. Therefore, Counts VI through XVI are timely as to all defendants named in the original complaint.[26]

---

**26.** The addition of the Baker, Watts defendants in the amended complaint of July 2, 1984 raises several questions concerning the amendment's relation back to the initial filing of the action and the expiration of the statute of limitations. Rule 15(c) of the Federal Rules of Civil Procedure governs the relation back of amendments. That rule provides:

(c) Relation Back of Amendments. Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against him, the party to be brought in by amendment (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him.

Fed.R.Civ.P. 15(c).

Unquestionably, the claims asserted against Baker, Watts arose out of the transaction and conduct asserted in the original complaint; the alleged fraudulent sale of Mountainview and Newport securities. Rule 15(c) contains two further requirements for relation back. First, the defendant must have received notice of the action so as not to be prejudiced in maintaining his defense. Here, plaintiffs began to negotiate with the Baker, Watts defendants in November 1983, seeking a resolution of plaintiffs' claims against Baker, Watts. Paper No. 52. These negotiations apparently proceeded until June 1984, when plaintiffs sought leave to amend their complaint to include the Baker, Watts defendants. It is highly unlikely that Baker, Watts was not aware of the institution of the action against the other defendants on December 7, 1983. Moreover, it is quite likely that plaintiffs, as part of their negotiation strategy, indicated their willingness to add the Baker, Watts defendants to the action if the negotiations were unsuccessful. The Court concludes, therefore, that Baker, Watts had adequate notice of the institution of the present action and the possibility of their inclusion as defendants, so as not to be prejudiced in maintaining their defense on the merits. The second requirement of Rule 15(c) presupposes that plaintiffs made a mistake in identifying the proper parties to the action. No such mistake was made in the present case. Plaintiffs voluntarily chose a strategy which involved the filing of a lawsuit against some defendants and negotiation of a settlement with other defendants not initially included in the action. In filing the lawsuit in December 1983, plaintiffs knew that Baker, Watts was involved in the alleged fraudulent sale. Rather than include Baker, Watts in the lawsuit, however, plaintiffs sought a negotiated settlement. No mistake was made. Indeed, plaintiffs continued to pursue a negotiated settlement with Baker, Watts during the time they filed the first amended complaint in January 1984. Plaintiffs did not seek to include Baker, Watts in this amended complaint. Only when the negotiations broke down in June 1984 did plaintiffs decide to press their claims against the Baker, Watts defendants. Plaintiffs cannot now maintain that they intended to sue the Baker, Watts defendants *ab initio.* Plaintiffs are therefore saddled

Accordingly, it is this 31st day of May, 1985, by the United States District Court for the District of Maryland,

ORDERED:

1. That defendants' motions to dismiss Count I be, and the same hereby are, DENIED;

2. That defendants' motions to dismiss Counts II, III, IV, and V be, and the same hereby are, GRANTED;

3. That the motions of defendants Schwartzman, Weinstock, Garelik & Mann, P.C., Herman Schwartzman, Leonard I. Weinstock, Bernard E. Troy, Howard S. Jacobs, Edward B. Fingerman, DiGuilian & CiChiara, P.A., Sidney A. Bernstein, Zayle A. Bernstein, and Marvin Rosenbaum to dismiss Counts VI and VII be, and the same hereby are, GRANTED;

4. That the motions of defendants Cohen, Halajen, Mountainview, Newport, and Baker, Watts to dismiss Counts VI and VII be, and the same hereby are, DENIED;

5. That defendants' motions to dismiss Counts IX, X, and XII be, and the same hereby are, GRANTED;

6. That defendants' motions to dismiss Counts VIII, XIII, XIV, XV, and XVI be, and the same hereby are, DENIED.

with the consequences of their litigation strategy. The claims against Baker, Watts will not relate back to the date of the original complaint. Rather, Counts V, VI, VII, XI, and XVI are deemed to have been interposed against the Baker, Watts defendants on July 2, 1984, the date of the second amended complaint.

For purposes of the present motion to dismiss, this conclusion has little effect. It may, however, have a significant impact upon the common-law claims against Baker, Watts during later stages of the litigation. The Court is not prepared at this time to conclude that, as a matter of law, plaintiffs knew or should have known their common-law claims as of February 1981. Thus, accepting as true, plaintiffs allegations that they did not know of their claims until May of 1983, the claims against Baker, Watts are timely under the three-year statute of limitations, despite their late addition. If, however, upon a motion for summary judgment, additional materials are presented which indicate that February 1981 is the operative date, or should a jury determine February 1981 to be the correct date, the claims against Baker, Watts will be time-barred.